IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Robert Lee Isom, Jr.,                    )
                                         )
            Petitioner,                  )    Case No. 8:11-cv-01747-TLW-JDA
                                         )
            v.                           )    **REPORT AND RECOMMENDATION**
                                         )    **OF MAGISTRATE JUDGE**
Warden Robert M. Stevenson, III,         )
                                         )
            Respondent.                  )
_____  )

This matter is before the Court on supplemental briefing regarding the applicability and effect, if any, of the United States Supreme Court decisions in *Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, — U.S. —, 133 S. Ct. 1911 (2013), on this Petition. Petitioner, proceeding pro se, is a state prisoner who seeks relief pursuant to 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on July 18, 2011.[1] [Doc. 1.] On June 21, 2012, the Honorable Terry L. Wooten granted Respondent's motion for summary judgment and denied the Petition. [Doc. 39.] After appealing to the Fourth Circuit Court of Appeals, Petitioner filed a motion for reconsideration in this Court on November 28, 2012. [Doc. 48.] On September 17, 2013, Chief Judge Wooten granted Petitioner's motion for reconsideration, reopened the case, and remanded it to the undersigned for a

_____

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on July 18, 2011. [Doc. 1-7 at 1 (envelope marked "received" by mail room July 18, 2011).]

supplemental Report and Recommendation on the limited issue of the applicability and effect, if any, of the United States Supreme Court decisions in *Martinez* and *Trevino* on this Petition. [Doc. 55.] At the Court's direction, Petitioner filed a supplemental brief on December 18, 2013; Respondent filed a response brief on January 10, 2014; and Petitioner filed a reply brief on January 27, 2014. [Docs. 68, 71, 72.] The issue is ripe for review.

## BACKGROUND

Petitioner is currently incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Charleston County.[2] [Doc. 1 at 1; Doc. 79 (notice of change of address to Lee Correctional Institution).] Petitioner was indicted by the Charleston County Grand Jury during the May 2003 Term of the Court of General Sessions for murder and possession of a firearm during the commission of a violent crime and during the October 2003 Term of the Court of General Sessions for criminal sexual conduct - first degree and assault and battery of a high and aggravated nature. [App. 943–50.[3]] Represented by Jennifer Kneece

---

[2]At the time he filed the Petition, Petitioner was confined at Broad River Correctional Institution, where the warden was Respondent Robert M. Stevenson, III [Doc. 1 at 1], but on December 22, 2015, Petitioner filed a notice of change of address updating his address, and he is currently confined at Lee Correctional Institution [Doc. 79]. A prisoner's immediate custodian—the warden of the facility where the prisoner is being held—is the proper respondent in a habeas corpus action because the immediate custodian has the power to produce the prisoner's body before the habeas court. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). If a prisoner properly files a habeas petition naming the prison warden as the respondent and is relocated to another prison before the court decides whether to grant the petition, the court "retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has the legal authority to effectuate the prisoner's release." *Id.* at 441 (discussing *Ex parte Endo*, 323 U.S. 283 (1944)). Thus, this Court retains jurisdiction over the Petition following Petitioner's transfer to Lee Correctional Institution.

[3]The Appendix can be found at Docket Entry Numbers 17-9 through 17-17.

Shealy and Daniel Prenner, on October 20, 2003, Petitioner proceeded to a jury trial before the Honorable Deadra L. Jefferson. [App. 3.] On October 23, 2003, Petitioner was found guilty as indicted. [App. 911–12.] Judge Jefferson sentenced Petitioner to five years for possession of a firearm during the commission of a violent crime; 30 years for criminal sexual conduct in the first degree; ten years for assault and battery of a high and aggravated nature; and life without the possibility of parole for murder. [App. 936–37.] The sentences were to run concurrently. [App. 937.]

**Direct Appeal**

Petitioner, represented by Joseph Savitz, III ("Savitz") of the South Carolina Office of Appellate Defense, appealed his convictions and sentences. [Doc. 17-1.] Savitz filed an *Anders*[4] brief and a petition to be relieved as counsel. [*Id.*] In the brief, Savitz asserted the following issue:

> The judge erred by allowing the State to introduce evidence [Petitioner] was apprehended while driving a previously-stolen automobile, since this unrelated prior bad act served to place his character in issue in violation of South Carolina Evidence Rules 403 and 404.

[Doc. 17-1 at 4.] Petitioner did not submit a pro se brief. [*See* Doc. 17-2 at 2.] On May 1, 2006, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted Savitz's motion to be relieved. [Doc. 17-2] The South Carolina Court of Appeals issued remittitur on June 5, 2006. [Doc. 17-3.]

---

[4] A brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

**PCR Proceedings**

Petitioner filed an application for post-conviction relief ("PCR") on February 28, 2007. [App. 952–58.] On December 17, 2007, Petitioner, through counsel, filed an amended PCR application, alleging (1) the difference in the time and date of the murdered victim on Petitioner's warrant and on the death certificate created a subject matter jurisdiction claim; (2) an issue with the identification procedure of the witness at trial; (3) there was never a rape kit or DNA kit on Petitioner or the victim and no medical examiner took the stand; (4) there was no fingerprint match; and (5) a due process claim or a confrontation clause claim because the State used testimony without putting the witness on the stand. [App. 959–62.] The State filed a return and motion to dismiss on February 13, 2008, asserting all issues raised by Petitioner in his amended PCR application were direct appeal issues and not cognizable claims under the PCR Procedure Act, S.C. Code § 17-27-10 et seq. [App. 963–67.] The Honorable Roger M. Young, Sr. issued a Conditional Order of Dismissal on February 18, 2008 and a Final Order dismissing Petitioner's PCR application on April 15, 2008. [App. 968–73.]

On April 10, 2008, Petitioner filed a notice and motion to amend and supplement pleadings,[5] in which he raised the issue of ineffective assistance of counsel for failing to point out that the witness described her attacker as a person seven inches shorter and 40 pounds lighter than Petitioner. [App. 975–86.] On April 16, 2008, Judge Young granted

---

[5]The motion was dated February 20, 2008 but was not filed at that time. [*See* App. 1000, n.1.]

Petitioner's motion to amend and supplement pleadings.[6]    [App. 996.]    Subsequently,

Petitioner filed a petition for writ of certiorari to the Supreme Court of South Carolina.    [*Id.*]

On September 25, 2008, the State submitted a motion to dismiss without prejudice and

remand for a full PCR hearing.    [App. 994–97.]    On October 22, 2008, the Supreme Court

dismissed the appeal without prejudice and remanded the matter to the circuit court for a

full PCR hearing on October 22, 2008.    [App. 1000–01.]    The Supreme Court also

appointed Tricia A. Blanchette ("Blanchette") to represent Petitioner in the PCR action.

[App. 1001.]

On February 9, 2009, the PCR court held an evidentiary hearing into the matter.

[App. 1002–32.] Petitioner was present at the hearing and was represented by Blanchette;

Petitioner and his uncle, Larry Miller, testified.    [*Id.*]    At the evidentiary hearing, Petitioner

alleged the following failures by trial counsel constituted ineffective assistance of counsel:

1.    Failure to investigate into whether there was any DNA testing or a rape kit done;

2.    Failure to address the discrepancy between time of death on the death certificate and on the affidavit of the warrant;

3.    Failure to investigate and address a fingerprint issue;

4.    Failure to address discrepancies between the bandit form, the composite sketch, and Petitioner's appearance when he was arrested;

5.    Failure to address the issue of media coverage;

6.    Failure to object to the solicitor's statement during closing argument about what Keith Griffin would have testified to;

7.    Failure to investigate further into Petitioner's uncle's testimony; and

---

[6]Judge Young's Order was not included in the Appendix or Respondent's return made to this Court.

8.     Failure to address the victim's wife's claim that she saw Petitioner on the street three months before the murder when Petitioner was incarcerated at that time.[7]

[*Id.*]  The PCR court held the record open to obtain testimony from trial counsel.  [App. 1031.]  On July 21, 2009, a second hearing was held, in which Shealy and Petitioner testified.  [App. 1033–59.]  On August 14, 2009, the PCR court denied and dismissed Petitioner's PCR application.  [App. 1060–67.]

Petitioner, represented by Robert M. Pachak ("Pachak"), Appellate Defender of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, appealed the dismissal of Petitioner's PCR application to the South Carolina Supreme Court.  [Doc. 17-4.]  Pachak filed a *Johnson*[8] petition for writ of certiorari and a petition to be relieved as counsel.  [*Id.*]  In the brief, Pachak presented the following issue:

Whether trial counsel was ineffective in her representation of petitioner?

_____

[7]The Court notes the PCR court concluded Petitioner alleged his trial counsel provided ineffective assistance because counsel:

a.     Failed to prepare and investigate.
b.     Failed to properly address discrepancies between the bandit form, the composite, and [Petitioner's] appearance.
c.     Failed to object to solicitor's statement during closing argument about what Keith Griffin would have testified to.
d.     Failed to request change of venue based on media coverage.

[App. 1062.]  However, a review of the filings in the PCR application and the transcript of the evidentiary hearing reveals more specific allegations under what the PCR court broadly characterized as failure to prepare and investigate.

[8]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief.  *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

[*Id.* at 3.]  Petitioner filed a pro se petition for writ of certiorari in which he asserted the following issues, quoted substantially verbatim:

1.  Did PCR court err in not finding trial counsel ineffective, and in not finding Petitioner's due process right's were violated when Petitioner was sentenced excessively?

2.  Did the PCR court err in not finding Petitioner's constitutional due process rights were violated by insufficient evidence to sustain the convictions?

3.  Did PCR court err in not finding Petitioner's constitutional due process rights were violated because of the admission of the testimony of Mariana Cordova by the trial court and additionally did the PCR court err in not finding trial counsel ineffective for not objecting upon the proper legal principles when challenging the admission and content of Mariana Cordova's testimony.

4.  Did PCR court err in not finding Petitioner's constitutional due process rights were violated because the charging murder indictment lacks time and death of the deceased; and additionally did the PCR court err in not finding trial counsel ineffective for not objecting to the indictment and moving for direct verdict on this legal and factual point.

5.  Did PCR court err in not ruling the identification reliability and procedures violated Petitioner's constitutional due process rights and additionally did the PCR court err in not finding trial counsel ineffective for not articulating the proper legal principles to challenge the identification procedures and the resulting identification evidence.

[Doc. 17-5.]  On April 21, 2011, the South Carolina Supreme Court denied the petition and granted Pachak's request to withdraw.  [Doc. 17-6.]  After a petition for rehearing was denied [Doc. 17-7], remittitur was issued on May 25, 2011 [Doc. 17-8].

**Petition for Writ of Habeas Corpus**

Petitioner filed this petition for writ of habeas corpus on July 18, 2011 pursuant to

28 U.S.C. § 2254, raising the following grounds for relief, quoted substantially verbatim:

**Ground One:**    Ineffective assistance of counsel

*Supporting Facts:*    1)    Did PCR court err in not finding trial counsel ineffective, and in not finding Petitioner's due process rights were violated when Petitioner was sentenced excessively?

2)    Did the PCR court err in not finding that Petitioner's due process rights were violated by insufficient evidence to sustain the convictions?

3)    Did the PCR court err in not finding Petitioner's constitutional due process rights were violated because of the admission of the testimony of Mariana Cordova by the trial court, and additionally did the PCR court err in not finding trial counsel ineffective for not objectioning upon the proper legal principles when challenging the admission and content of Mariana Cordova's testimony.

4)    Did the PCR court err in not finding Petitioner's constitutional due process rights were violated because the charging murder indictment lacks time and death of the deceased; and additionally did the PCR court err in not finding trial counsel ineffective for not objecting to the indictment and moving for direct verdict on this legal and factual point.

5)    Did the PCR court err in not ruling the identification reliability and procedures violated Petitioner's constitutional due process rights, and additionally did the PCR court err in not finding trial counsel ineffective for not articulating the proper legal principles to challenge the identification procedures and the resulting identification evidence.

6)    Did the PCR court err in not finding that Petitioner's Sixth Amendment's confrontation clause of the United States constitutional amendment were violated when Petitioner was not afforded the opportunity to cross-examine the out-of-court declarant, and additionally did the PCR court err in not finding that Petitioner's due process rights were violated when the prosecution presented an out-of-court conversation that he had

8

with Keith Griffin, an witness he intended to call to testify against the Petitioner?

**Ground Two:**     Due process violations

*Supporting Facts:*   1)   Did the PCR court err in not finding that Petitioner's due process rights were violated by insufficient evidence to sustain the convictions?

2)   Did the PCR court err in not finding trial counsel ineffective, and in not finding Petitioner's due process rights were violated when Petitioner was sentenced excessively?

3)   Did the PCR court err in not finding Petitioner's constitutional due process rights were violated because of the admission of the testimony of Mariana Cordova by the trial court, and additionally did the PCR court err in not finding trial counsel ineffective for not objectioning upon the proper legal principles when challenging the admission and content of Mariana Cordova's testimony.

4)   Did the PCR court err in not finding Petitioner's constitutional due process rights were violated because the charging murder indictment lacks time and death of the deceased; and additionally did the PCR court err in not finding trial counsel ineffective for not objecting to the indictment and moving for direct verdict on this legal and factual point.

5)   Did the PCR court err in not ruling the identification reliability and procedures violated Petitioner's constitutional due process rights, and additionally did the PCR court err in not finding trial counsel ineffective for not articulating the proper legal principles to challenge the identification procedures and the resulting identification evidence.

6)   Did the PCR court err in not finding that Petitioner's Sixth Amendment's confrontation clause of the United States constitutional amendment were violated when Petitioner was not afforded the opportunity to cross-examine the out-of-court declarant, and additionally did the PCR court err in not finding that Petitioner's due process rights were violated when the prosecution presented an out-of-court conversation that he had with Keith Griffin, an witness he intended to call to testify against the Petitioner?

9

[Doc. 1 at 5–7, 15–18.]  As previously stated, Chief Judge Wooten granted Respondent's motion for summary judgment and denied the Petition [Doc. 39] but later granted Petitioner's motion for reconsideration, reopened the case, and remanded it to the undersigned for a supplemental Report and Recommendation [Doc. 55].  The parties have briefed the issue of the applicability and effect, if any, of the United States Supreme Court decisions in *Martinez* and *Trevino* on this Petition [Docs. 68, 71, 72]; accordingly, the issue is ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

12

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has

appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)    (I) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest

court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[9]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

---

[9]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the Supreme Court of South Carolina through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts

16

have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing

17

*Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

In granting summary judgment and denying the Petition, the Court found Supporting Facts One through Four of Ground One and Supporting Facts One through Six of Ground Two are procedurally barred from federal habeas review.[10] [Doc. 35 at 19–27 (Report and

---

[10]As noted in the previous Report and Recommendation, liberally construing the Petition, the Court found the supporting facts actually constitute grounds for relief;

Recommendation concluding that these claims are procedurally barred from federal habeas review); Doc. 39 (Order accepting Report and Recommendation).]  In his motion for reconsideration, Petitioner argued that the holding in *Martinez* is applicable to his Petition to establish cause and prejudice to excuse the procedural default of Supporting Facts One through Four of Ground One and Supporting Facts One through Six of Ground Two.[11] [Doc. 48.]  In his supplemental brief and reply brief, Petitioner argues the default of the claims found to be procedurally barred is wholly attributable to the ineffective assistance of PCR counsel because Petitioner urged Blanchette to raise these claims to the PCR court but Blanchette failed to raise them and failed to file a Rule 59(e) motion to preserve these issues in the PCR court.  [Docs. 68, 72.]

---

therefore, the Court construed the Petition as alleging six ineffective assistance of counsel claims—Supporting Facts One through Six of Ground One—and six direct claims based on alleged due process violations—Supporting Facts One through Six of Ground Two.  In addition to granting summary judgment with respect to Supporting Facts One through Four of Ground One and Supporting Facts One through Six of Ground Two as procedurally barred from federal habeas review, the Court granted summary judgment on the merits of Supporting Facts Five and Six of Ground One.  [Doc. 35 at 28–32 (Report and Recommendation recommending that summary judgment be granted as to the merits of these claims); Doc. 39 (Order accepting Report and Recommendation).] Petitioner did not seek reconsideration of summary judgment with respect to Supporting Facts Five and Six of Ground One; accordingly, the Court need not address these claims.

[11]In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  132 S. Ct. at 1315.  The decision in *Martinez* was issued on March 20, 2012, shortly before the initial Report and Recommendation was filed in this case.  Although Respondent argues that Petitioner has abandoned any argument with respect to *Martinez* because he failed to raise the argument in his objections to the previous Report and Recommendation [Doc. 71], Respondent previously raised this argument in his response in opposition to the motion for reconsideration [Doc. 53], and Chief Judge Wooten granted Petitioner's motion for reconsideration [Doc. 55].  Accordingly, the undersigned declines to address Respondent's argument that Petitioner abandoned his *Martinez* arguments by failing to raise them in his objections to the previous Report and Recommendation.

In *Martinez*, the Supreme Court elaborated,

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. Accordingly, the Court in *Martinez*

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino*, 133 S.Ct. at 1918 (quoting *Martinez*, 132 S.Ct. at 1318–19, 1320–21). The Court in *Martinez* also noted,

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S.Ct. at 1319. Here, the Court must determine whether the limited exception in *Martinez* establishes cause to excuse the procedural default of Supporting Facts One through Four of Ground One and Supporting Facts One through Six of Ground Two.

**Ground Two**

As an initial matter, *Martinez* does not apply to Supporting Facts One through Six of Ground Two because they are not ineffective assistance of counsel claims. Accordingly, Supporting Facts One through Six of Ground Two are procedurally barred from consideration by a federal habeas court and should be dismissed.

**Ground One**

Ground One raises ineffective assistance of counsel claims; therefore, *Martinez* is applicable to these claims. The Court will assume without deciding that Petitioner can show Blanchette was ineffective for failing to raise Supporting Facts One through Four of Ground One to the PCR court and for failing to file a Rule 59(e) motion with the PCR court. Accordingly, the Court will proceed with an analysis of whether the underlying ineffective assistance of trial counsel claim is substantial, i.e. whether Petitioner can demonstrate that trial counsel was ineffective under the standard articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 688 (1984).[12]

---

[12]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of

### *Supporting Fact One*

In Supporting Fact One of Ground One, Petitioner asserts that trial counsel was ineffective for failing to challenge Petitioner's sentence as excessive because Petitioner was sentenced to life without the possibility of parole for murder and five years for possession of a firearm during the commission of a violent crime even though S.C. Code Ann. § 16-23-490 provides that the five-year sentence does not apply in cases where the death penalty or a life sentence without parole is imposed for the violent crime.  Petitioner cannot establish that trial counsel was ineffective under *Strickland*, however, because Petitioner cannot establish that he was prejudiced as a result of trial counsel's failure to challenge Petitioner's five-year sentence for possession of a firearm during the commission of a violent crime.  As stated, Petitioner was sentenced to concurrent sentences of five years for possession of a firearm during the commission of a violent crime; 30 years for criminal sexual conduct in the first degree; ten years for assault and battery of a high and aggravated nature; and life without the possibility of parole for murder.  [App. 936–37.] Therefore, even if trial counsel had challenged Petitioner's sentence and the trial court had not imposed the five-year sentence for possession of a firearm during the commission of a violent crime, Petitioner would be serving the same overall sentence because the trial court imposed the five-year sentence concurrent with the ten-year, 30-year, and life sentences.  Accordingly, Petitioner has failed to demonstrate the prejudice prong of the *Strickland* test.

---

reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

### *Supporting Fact Two*

In Supporting Fact Two of Ground One, Petitioner asserts that trial counsel was ineffective for failing to challenge the sufficiency of the evidence to convict Petitioner at trial. Petitioner cannot establish that this ineffective assistance of trial counsel claim has any merit because his claim is refuted by the record.  After the State rested its case at trial, trial counsel moved for a directed verdict, arguing that the State failed to present competent evidence to prove the charges.  [App. 683:20–84:9.]  Trial counsel renewed the motion for a directed verdict at the close of the evidence.  [App. 814:22–15:2.]  After the jury returned the verdict, trial counsel renewed the directed verdict motions and moved for a new trial. [App. 917:12–16.]  Because Petitioner's assertion that trial counsel failed to challenge the sufficiency of the evidence to convict Petitioner is refuted by the record,[13] Petitioner has failed to establish that this claim has merit.

### *Supporting Fact Three*

In Supporting Fact Three of Ground One, Petitioner asserts that trial counsel was ineffective for not objecting upon the proper legal principles when challenging the admission and content of Mariana Cordova's testimony.  In his reply brief, Petitioner clarifies that he is alleging "trial counsel failed to perform reasonably at the Neil-v-Biggers identification hearing when counsel failed to point out the witness's prior description of the perpetrator was different from the Petitioner's actual appearance."  [Doc. 72 at 12.]  This

---

[13]Any argument in Petitioner's reply brief that trial counsel failed to follow the proper procedure for challenging the sufficiency of the evidence is also refuted by the record.  As stated, trial counsel moved for a directed verdict after the State rested its case and again at the close of the evidence; after the jury returned the verdict, trial counsel renewed those directed verdict motions and moved for a new trial.

claim regarding trial counsel's effectiveness during the *Biggers* hearing was addressed on the merits under Supporting Fact Five of Ground One in the previous Report and Recommendation [Doc. 35 at 23–30], and as stated, Petitioner did not seek reconsideration of summary judgment with respect to Supporting Fact Five.

### Supporting Fact Four

In Supporting Fact Four, Petitioner asserts that trial counsel was ineffective for not objecting to the indictment and moving for a directed verdict based on the indictment lacking time and death of the deceased. Petitioner cannot establish that trial counsel was ineffective under *Strickland* because Petitioner cannot establish that trial counsel was deficient for failing to object to the indictment. With respect to the murder count, the indictment provided as follows:

> That Robert Lee Isom, Jr. did in Charleston County on or about January 3, 2003 feloniously, willfully and with malice aforethought murder one Richard Garcia, to wit: the defendant did shoot the victim in the face, and that Richard Garcia did die in Charleston County as a proximate result on or about January 3, 2003. This is in violation of § 16-3-10 of the South Carolina Code of Laws (1976) as amended.

[App. 944.] The Supreme Court of South Carolina addressed a similar indictment in *Winns v. State*, 611 S.E.2d 901 (S.C. 2005). In *Winns*, the indictment provided,

> That HERMAN WINNS did in Berkeley County on or about October 4, 1997 while at apartment # 5 at Belangia Apartments in the town of St. Stephen, South Carolina, with malice aforethought, strike John Arthur Mouzon several times in the head with a metal object, said blows to the head being the proximate cause of the death of John Arthur Mouzon. This action being in violation of § 16–3–10, South Carolina Code of Law (1976), as amended.

*Winns*, 611 S.E.2d at 903. The Supreme Court of South Carolina held

24

the PCR court erred in finding the indictment defective. Although the indictment did not state that Mouzon did "then and there" die, the only logical reading of the indictment is that on October 4, 1997, Winns hit Mouzon in the head several times, at the Belangia Apartments, and Mouzon died either at the time he was attacked or soon thereafter. The indictment provides the time of death (October 4, 1997) and the place of death (the Belangia Apartments, St. Stephens, South Carolina). Had the victim been found in a different location or on a different date, the indictment, as written, may have been insufficient. But because Mouzon was found dead in his bed, on the same day and in the same place where Winns struck him, and because the indictment explained that the blows to the head were the "proximate cause of death," we find that the indictment states the offense of murder with sufficient certainty and particularity such that Winns knew what he was being called upon to answer. Accordingly, the indictment was not defective.

*Winns*, 611 S.E.2d at 903–04 (footnote omitted). Much like the indictment at issue in *Winns*, the only logical reading of the indictment in this case is that on or about January 3, 2003, Petitioner shot the victim in Charleston County, and the victim died either at the time he was shot or soon thereafter. As in *Winns*, the indictment provided a time of death (on or about January 3, 2003) and place of death (Charleston County, South Carolina), such that Petitioner knew what he was being called upon to answer. Accordingly, because the indictment was not defective, trial counsel's performance could not have been deficient for failing to object to the indictment.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the undersigned recommends that the Court find that Petitioner has failed to establish cause under *Martinez* to excuse the procedural default of Petitioner's procedurally barred claims.

25

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

March 1, 2016
Greenville, South Carolina